In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1994

SAMUEL ADEBISI AWE,

*Petitioner-Appellant*,

*v.*

JOHN ASHCROFT, Attorney General,

*Respondent-Appellee.*

Petition for Review of an Order
of the Board of Immigration Appeals
No. A29-451-756

ARGUED JANUARY 16, 2003—DECIDED MARCH 31, 2003

Before FLAUM, *Chief Judge*, and COFFEY and RIPPLE,
*Circuit Judges*.

FLAUM, *Chief Judge*. Petitioner Samuel Adebisi Awe
seeks review of a final order of the Board of Immigration
Appeals ("BIA") summarily dismissing Awe's appeal
pursuant to 8 C.F.R. § 3.1(d)(2)(i)(D) for his failure to file
a separate written brief after indicating his intent to do
so. For the following reasons, we affirm the BIA's final
order denying Awe asylum and withholding of deporta-
tion and granting him voluntary departure to Nigeria.

## I. BACKGROUND

Awe, his wife Julianah Apeke Awe, and their three
children, Olayemi Adenike Awe, Temitope Adesola Awe,

and Oluwagbenga Kolawole Awe, are natives and citizens of Nigeria who legally entered the United States at different times on nonimmigrant visitor visas. Each member of the Awe family subsequently remained in the United States beyond the date authorized by his or her visa, and in 1998 the Immigration and Naturalization Service ("INS") served the Awes with Notices to Appear, charging them under § 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), with overstaying their visitors' visas. The Awes conceded deportability at their initial appearance and now seek asylum under INA § 208, 8 U.S.C. § 1158, and withholding of deportation under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), based on a well-founded fear that they would be persecuted for their political opinions if forced to return to Nigeria.[1]

Awe is a Christian and a member of the Yoruba tribe, which comprises approximately 20% of the population in Nigeria. During the last 33 years he has traveled repeatedly to the United States from Nigeria, mostly for educational and medical reasons. Awe first entered the United States as a graduate student in 1969 and voluntarily returned to Nigeria to work as a civil servant after earning two degrees at California State University at San Luis Obispo. He reentered the United States in 1976 to attend the University of Wisconsin and then returned to Nigeria in 1979 after earning a PhD. In 1985 Awe again came to the United States, this time on a medical visa, and returned to Nigeria after receiving treatment for a kidney

---

[1]  The INS initiated removal proceedings against Sam, Julianah, Olayemi, Temitope, and Oluwagbenga Awe as individuals, but their cases were consolidated for hearing by the IJ. The IJ's decision and subsequent appeals by the Awes focus solely on Sam's situation as it relates to the family's claims for asylum and withholding of deportation; thus, we refer to the entire Awe family in this appeal through Sam Awe, or just Awe.

ailment which continues to plague him today.[2] Before his most recent return to the United States in 1995, Awe served as Minister of Agriculture in Nigeria from 1993 to 1995 under former President Abacha. Awe now lives with his family in Milwaukee, Wisconsin, and teaches middle school there.

The basis for Awe's requests for asylum and withholding of deportation arises from his tenure as Minister of Agriculture in Nigeria. Specifically, Awe claims that the Nigerian government persecuted him in the past for his political beliefs, which Awe defines as his lack of political allegiances in Nigeria combined with his perceived pro-American sympathies, which he allegedly acquired while living and studying in the United States. Awe contends that two incidents in particular prove that he suffered persecution by the Nigerian government: (1) he was fired from his post as Minister of Agriculture for not paying bribes to his supervisors, and (2) he endured a two-hour interrogation in which he was asked about his political affiliations and whether he represented America or the CIA. Awe also asserts a fear of future persecution in Nigeria based on these past incidents and maintains that, notwithstanding the election of a new president in 1999, the country conditions in Nigeria have gotten worse and not better.

After a hearing the Immigration Judge ("IJ") denied Awe's application for asylum and withholding of deporta-tion because he found that Awe had proved neither a reasonable, well-grounded fear of future persecution nor a

---

[2] Awe's attorney stated at oral argument that, in addition to filing for asylum and withholding of deportation, he had requested a stay of deportation from the INS so that Awe could remain in the United States and receive necessary medical treatment for his kidney condition.

clear probability of being persecuted upon his return to Nigeria, as required by law. *See* INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. §§ 208.13(b)(2)(i)(B), 208.16(b)(2); *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987); *INS v. Stevic*, 467 U.S. 407 (1984). The IJ found that Awe's loss of his appointment as Minister of Agriculture and two-hour interrogation did not rise to the level of persecution. The IJ also noted that the election of a new president in Nigeria not only promised a more stable democratic government but suggested that any lingering hostility toward Awe that might have existed in the past regime would not likely be present in the new one.

Awe timely appealed his case to the BIA by submitting a Notice of Appeal, Form EOIR-26, on which he checked the box indicating that he intended to file a separate written brief in support of his appeal. Also, in the space provided on the Notice of Appeal itself, Awe stated in some detail his reasons for appealing the IJ's decision. At that time Awe requested, and later received, an additional 30 days to file his brief; however, he never submitted a brief or an explanation for its absence to the BIA. One month after Awe's brief was due but never filed, the INS filed a brief expressing its support for the IJ's decision. Two months later the BIA summarily dismissed Awe's appeal, citing 8 C.F.R. § 3.1(d)(2)(i)(D) as authority. That particular regulation provides for summary dismissal of an appeal in any case in which the party "indicates on Form EOIR-26 or Form EOIR-29 that he or she will file a brief or statement in support of the appeal and, thereafter, does not file such brief or statement, or reasonably explain his or her failure to do so, within the time set for filing." The BIA's order also stated that "upon review of the record" the BIA was "not persuaded that the Immigration Judge's ultimate resolution of this case was in error."

In the instant appeal, Awe does not challenge the BIA's decision to dismiss his petition for procedural reasons but instead argues that the BIA's substantive review of the IJ's decision was flawed. Specifically, Awe argues that the BIA's decision on the merits of his case was "woefully inadequate" because it "merely rubber-stamp[ed]" the IJ's conclusion that Awe had not established past or future persecution. In response, the INS insists that the BIA did not make a merits determination of Awe's case but instead relied solely on § 3.1(d)(2)(i)(D) as the basis for its decision. Thus, according to the INS, the only issue now properly before this court is a procedural one. The INS further asserts that Awe waived his right to challenge the BIA's procedural dismissal by failing to raise the issue in his opening brief, but maintains that even if Awe had challenged it, the BIA's dismissal of his appeal was appropriate and should be affirmed.

## II. ANALYSIS

This court reviews only the final determinations of the BIA. *See* 8 U.S.C. § 1252(a)(1) (governing judicial review of final orders of removal); *Balazoski v. INS*, 932 F.2d 638, 640 (7th Cir. 1991). We do not review directly the decisions of the IJ, except in those cases where the BIA has expressly adopted the IJ's findings. *See Begzatowski v. INS*, 278 F.3d 665, 670 (7th Cir. 2002). Here, the BIA issued *per curiam* a one-page explanation of its decision to dismiss Awe's appeal and affirm the IJ's resolution of his case. In its written order, the BIA invoked § 3.1(d)(2)(i)(D) as its authority to dismiss certain procedurally defective appeals and found Awe's appeal to be procedurally defective because Awe indicated that he would file a brief but never did and never explained why. The BIA then stated that "upon review of the record" it was "not persuaded that the Immigration Judge's ultimate resolu-

tion of this case was in error," and so it exercised its discretion under § 3.1(d)(2)(i)(D) to dismiss Awe's appeal.

Before we decide whether the BIA properly dismissed Awe's petition, we must first address the INS's contention that Awe waived his right to challenge the procedural grounds for the BIA's decision because he failed to raise the issue in his appellate brief. *See Holman v. State*, 211 F.3d 399, 406 (7th Cir. 2000) (finding arguments not raised in initial appellate brief waived); *Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001) (finding arguments not raised before trial court waived). In *Holman* we held that appellants who advanced a legal theory at oral argument that they had never before raised in their briefs on appeal had waived that new argument. 211 F.3d at 406. Similarly, in *United States v. Conley*, 291 F.3d 464, 468 n. 3 (7th Cir. 2002), we held that the appellant waived his right to challenge jury instructions at oral argument when he had neither presented the issue to the trial court nor raised it in his briefs on appeal. *See also Kasper v. St. Mary of Nazareth*, 135 F.3d 1170, 1174 (7th Cir. 1998) (finding arguments that appear for the first time at oral argument waived).

Here, Awe made no reference in his appellate brief to the BIA's decision to dismiss his appeal under § 3.1(d)(2)(i)(D), and he offered no explanation for why he had failed to submit a separate written brief to the BIA. At oral argument, however, Awe's attorney acknowledged that he had missed the BIA's briefing deadline, but he maintained that his mistake was not fatal because the Notice of Appeal gave the BIA a "fair appraisal" of the issues to be addressed in Awe's appeal.[3] Because Awe

---

[3] Though Awe did not cite any case law supporting this theory at oral argument, at least one other circuit has held that the
(continued...)

failed to present this alternative notice theory at any point prior to oral argument, we find that it is waived. *See Holman*, 211 F.3d at 406; *Conley*, 291 F.3d at 468 n. 3.

Even assuming Awe had not waived his right to challenge the BIA's procedural dismissal, we note that 8 C.F.R. § 3.1(d)(2)(i)(D) explicitly gives the BIA authority to dismiss procedurally defective appeals, and we have condoned the BIA's use of this power in cases similar to this one. *See Stroe v. INS*, 256 F.3d 498, 499 (7th Cir. 2001) (holding summary dismissal appropriate where party indicated he would file brief, requested and received 30-day filing extension, and never filed brief nor explained why he had not); *accord Rioja v. Ashcroft*, 317 F.3d 514, 515-16 (5th Cir. 2003). We do not see anything in the record here to suggest that the BIA inappropriately exercised its power in summarily dismissing Awe's appeal under § 3.1(d)(2)(i)(D), and we therefore affirm its decision on these grounds.

Although Awe cannot overcome the BIA's procedural dismissal of his case, he insists that the BIA made an alternative decision on the merits that was inadequate and must be remanded to the BIA for further explanation. Awe refers us to the BIA's written opinion, specifically its statement that "upon review of the record, we are not persuaded that the Immigration Judge's ultimate resolution of this case was in error," for proof that the BIA actually undertook a substantive review of his case and issued a merits decision. At oral argument attorney

---

[3]  (...continued)

BIA may excuse a petitioner's failure to file a brief if the Notice of Appeal is sufficiently thorough. *See Casas-Chavev v. INS*, 300 F.3d 1088, 1091 (9th Cir. 2002) (upholding BIA's strict specificity requirement for appealing decisions of IJs, but permitting petitioners to provide requisite reasons in separate brief or on Notice of Appeal form).

for the INS said that BIA opinions often include such statements, and it was his opinion that the BIA intended only to inform petitioners that it had looked for, and not found, any egregious constitutional violations in the record.

If, as Awe suggests, the BIA intended that statement alone to serve as a determination on the merits, we would likely find such a decision inadequate. *See Mansour v. INS*, 230 F.3d 902, 907 (7th Cir. 2000) (stating that court will uphold BIA's decision unless it was made "without a rational explanation" or was otherwise inadequate in its analysis of the record on appeal). But without speculating as to what exactly the BIA meant by this particular sentence in Awe's case, we conclude that the BIA's concentration in the rest of its opinion on its reasons for dismissing the case under § 3.1(d)(2)(i)(D) indicates that it was not making a determination on the substantive merits of Awe's case. Since our appellate review is limited to the BIA's final orders of removal, we decline to look beyond the BIA's stated, procedural reasons for dismissing Awe's appeal and will not undertake a review of the merits of Awe's case as decided by the IJ. *See* INA § 242(a)(1), 8 U.S.C. § 1252(a)(1); *Balazoski*, 932 F.2d at 640.

### III. CONCLUSION

We find that the BIA appropriately dismissed Awe's appeal under 8 C.F.R. § 3.1(d)(2)(i)(D) for failure to file a brief, and we therefore AFFIRM the BIA's final order denying Awe asylum and withholding of deportation and granting him voluntary departure to Nigeria.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*